UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MARTIN ANDERSON, )<br> )<br>  Plaintiff )<br> )<br> v. )<br> )<br>TRIDENT ENGINEERING AND )<br>INSPECTION CORP., et al., )<br> )<br>  Defendants ) | No. 2:21-cv-00149-LEW |

### ORDER ON *EX PARTE* MOTION
### FOR TEMPORARY RESTRAINING ORDER

On this day, Plaintiff Martin Anderson filed a Complaint (ECF No. 1) and a Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction (ECF No. 7). Preliminary injunctive relief is never awarded as of right and is extraordinary in nature, particularly when it is granted without giving the opposing party an opportunity to be heard. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *Baber v. Dunlap*, 349 F. Supp. 3d 68, 74 (D. Me. 2018). Nevertheless, Plaintiff contends he is likely to succeed on the merits of a claim arising under the federal Computer Fraud and Abuse Act ("CFAA") and will suffer irreparable injury unless injunctive relief is provided posthaste.

### BACKGROUND

Plaintiff Martin Anderson was or is the principal executive officer of an entity named Alaska Technical Training, Inc. ("ATTI"), which entity may or may not be a going

concern at this time. On March 13, 2019, Plaintiff sold ATTI's assets (but not its stock) to Southern Services, Inc. ("SSI"). In addition to the right to receive periodic monetary payments from SSI (paid to ATTI), Plaintiff secured an employment contract with SSI.

In or about March of 2021, Defendant Trident Engineering and Inspection Corporation purchased "SSI's Alaska Office." Compl. ¶ 20. Prior to closing the sale, during a visit to the Alaska office in January of 2021, Trident personnel represented to Plaintiff that Trident would assume the purchase-payment and employment obligations SSI owed to Plaintiff (though Plaintiff states that his contract with SSI was not assignable). During that visit, Plaintiff provided Trident personnel access to his computer (evidently an SSI asset) so that Trident could install software that would enable Plaintiff to perform work for Trident. On March 23, 2021, Trident notified Plaintiff that he was terminated. A few days later, Plaintiff appeared at the Alaska office to turn over the laptop he used while employed by SSI. The cause for the termination is not apparent from the TRO record, but one plausible inference is that it may relate to Plaintiff's observation that his noncompete agreement with SSI would terminate upon Trident's purchase of SSI's Alaska office.

This litigation arises out of subsequent activities related to certain online accounts evidently established by Plaintiff before SSI purchased the assets of ATTI. In particular, Plaintiff established an account with Brinkster, a cloud-based hosting service, which account Plaintiff used to host both business files and personal files (inclusive of personal email accounts). According to Plaintiff, after terminating his employment Trident personnel accessed his "personal" Brinkster account and made changes that prevent him from accessing the account and prevent him, his wife, and his child from accessing personal

2

email accounts and other private data. Although it is not clear from Plaintiff's papers, it appears that the Brinkster account was registered to martya@usalaska.biz, an email address Plaintiff used for business purposes. By commandeering the Brinkster account, Defendants can access all of the personal data that Plaintiff and his family have stored on Brinkster, including highly personal marital communications and attorney-client communications.

Plaintiff also alleges that he received notification that someone accessed his personal Google account on April 9, 2021, using a HP Laptop 14. Evidently, this was a computer owned by SSI and purchased by Trident because Plaintiff attributes the access to Defendants. Plaintiff also alleges that someone within Trident accessed his personal computer on April 10, 2021. What the someone may have done to either the Google account or the personal computer is not apparent from the pleadings. Finally, during the week of April 12, 2021, Defendants or their agents accessed a LinkedIn account established by Plaintiff and made unspecified changes to the account.

Plaintiff alleges he is entitled to damages and injunctive and equitable relief under the CFAA, specifically 18 U.S.C. § 1030(g), based on Defendants' knowing and intentional intrusion into his computer accounts and data, whether to obtain information from the same or recklessly or intentionally to cause harm. Compl. Count I.

## DISCUSSION

The standard for issuing a temporary restraining order is "the same as for a preliminary injunction." *Bourgoin v. Sebelius*, 928 F. Supp. 2d 258, 267 (D. Me. 2013). (citations and quotation marks omitted). Specifically, the record before the Court must demonstrate (A) that the plaintiff is likely to succeed on the merits of a claim for which

injunctive relief is available; (B) that plaintiff is likely to suffer irreparable harm absent interim relief; (C) that the balance of equities between or among the parties tips in the plaintiff's favor; and (D) that providing the requested relief will not harm the public interest. *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). As the party seeking injunctive relief – and as the only party before the Court – the plaintiff necessarily bears the burden of establishing that the factors favor the award of a temporary restraining order. *Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 117, 119-20 (1st Cir. 2011).

### A. Likelihood of Success

Failure to demonstrate a likelihood of success of the merits is ordinarily dispositive. *New Comm. Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). On the other hand, "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, ⸺ U.S. ⸺, 138 S. Ct. 1942, 1943–44 (2018) (per curiam). In the final analysis, "trial courts have wide discretion in making judgments regarding the appropriateness of such relief." *Francisco Sánchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2009)).

The First Circuit has provided a succinct description of the CFAA:

> Congress enacted the CFAA in 1984 to address the problems of computer crime and hacking. Pub. L. No. 98-473, 98 Stat. 2190; *see also WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012). Originally a criminal statute, in 1986 the Act was expanded to include a civil action component as well. Pub. L. No. 99-474, 100 Stat. 1213 (codified as amended at 18 U.S.C. § 1030); *Miller*, 687 F.3d at 201. Under the civil action provision, "[a]ny person who suffers damage or loss by reason of a violation of [18 U.S.C. § 1030] may maintain a civil action against the violator to

4

> obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The term "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information" and the term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(8), (11).

*Turner v. Hubbard Sys., Inc.*, 855 F.3d 10, 12 (1st Cir. 2017).

Plaintiff contends he is likely to prove Defendants are liable to him under the CFAA because they exercised control over "the Anderson Accounts" and by doing so have gained access to personal data stored in the accounts. Motion at 3 (ECF No. 7). As I see it, based on the TRO record, the only account that raises a particular concern that might warrant an order preventing ongoing unauthorized access to personal data is the Brinkster account used by Plaintiff to store both business and personal data. I will limit my consideration to that account because nothing suggests to me that Plaintiff has lost control over his Google account or a personal computer such that he cannot prevent Defendants from continuing to access them. Additionally, I do not see how Plaintiff will suffer any special harm due to the temporary loss of control over a LinkedIn account, meaning a harm so great that it cannot await a response from the Defendants, even assuming the LinkedIn account was not first established as a business account or asset of ATTI.

Turning then to the Brinkster account, it strikes me as likely that Plaintiff would be able to secure relief designed to recover the personal data described in his motion papers and relief designed to purge such data from any account maintained by Trident. I will, therefore, accept for present purposes that Plaintiff is likely to obtain some measure of

relief under the CFAA, although I am not prepared to say that the circumstances would not give rise to a viable defense to the CFAA claim, given that I have yet to hear from Defendants.

### B. Irreparable Injury

Plaintiff advises that the communications he seeks to secure on the Brinkster account are "so immensely private[] that a myriad of legal doctrines protect them: the attorney-client privilege, the work-produce doctrine, and the marital communications privilege." Motion at 9. Plaintiff regards Defendants' presumed past intrusion and ongoing ability to invade his privacy as irreparable injuries because of the sensitive nature of some of the documents. He states further:

> The fact that Defendants' actions have prevented (and continue to prevent) Anderson from being able to access his own prior email exchanges also subject him to harm that is irreparable and cannot be remedied by monetary damages. If Defendants are not enjoined from altering or destroying information in Anderson's accounts and ordered to preserve evidence discoverable in the Litigation, Anderson will forever be deprived of access to valuable, personal, and professional information and data, and the court will be deprived of relevant evidence.

*Id.* at 10.

I can appreciate Plaintiff's frustrations and concerns. However, the status quo has already persisted for two months. In that time, this Court or another court may have been able to evaluate a request for preliminary injunction with the advantage of input from the Defendants. Plaintiff's delay suggests to me that the better exercise of discretion is to provide the Defendants the opportunity to respond.

### C. Balance of Equities

I am not persuaded that the equities compel *ex parte* relief. To the extent business files and personal files were combined under one Brinkster account, that is a predicament of Plaintiff's own making.

D. **Public Interest**

I do not see that the public has an interest that would militate in favor of *ex parte* relief.

## CONCLUSION

Plaintiff's *ex parte* request for Temporary Restraining Order is DENIED.

**SO ORDERED.**

Dated this 17th day of June, 2021.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE